UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE


**Maria Korfiatis**

   v.                                    Case No. 18-cv-210-PB
                                          Opinion No. 2019 DNH 040
**Nancy A. Berryhill,**
**Acting Commissioner**
**Social Security Administration**


                         **MEMORANDUM AND ORDER**

    Maria Korfiatis challenges the denial of her applications for supplemental security income and disability insurance benefits pursuant to 42 U.S.C. § 405(g). She contends that the Administrative Law Judge ("ALJ") who considered her applications improperly evaluated her residual functional capacity and erred in finding that she could perform her past relevant work. The Acting Commissioner, in turn, moves for an order affirming the ALJ's decision. I grant Korfiatis's motion and remand the case to the agency because there is no indication in the record that the ALJ considered a medical source's opinion.

                         **I. BACKGROUND**

**A. Procedural Facts**

    Korfiatis is a 35-year-old woman with two years of college education. She has previously worked as a station cleaner, a medical receptionist, and a security guard. Korfiatis has allegedly been disabled since July 11, 2013, due to a

combination of rheumatoid arthritis, right wrist impairment, fibromyalgia, asthma, spinal impairment, obesity, and depression.

Korfiatis's applications were initially denied in October 2014. On September 20, 2016, she testified via video at a hearing before ALJ Matthew Levin, who ultimately denied her applications. See Administrative Transcript ("Tr.") 36. The Social Security Administration ("SSA") Appeals Council denied her request for review in November 2017, rendering the ALJ's decision the final decision of the Acting Commissioner. See Tr. 7-13. Korfiatis now appeals.

**B.    Medical Evidence**

Korfiatis is 5'5" tall and weighed 360 pounds at the time of the hearing. She fractured her right wrist in a work accident on July 11, 2013. Following the accident, she had two hand surgeries. Afterward, she continued complaining to her treating providers of pain and numbness in the wrist.

Dr. Matthew Clarke, one of her providers, indicated in his treatment notes in February, April and June 2014 that Korfiatis was cleared to return to work, but was limited to lifting, pushing, and pulling less than fifteen pounds without frequent, forceful, or repetitive motions with the right wrist. Tr. 543, 552, 555. She did not return to work at that time.

Starting in November 2014, Dr. Clarke changed his prognosis, indicating that Korfiatis could not return to work because of her right-hand pain. See Tr. 808. He repeated this observation in treatment notes from follow-up appointments throughout the following year. See Tr. 813, 819, 822.

In addition to her right-wrist injury, Korfiatis suffered from fibromyalgia and rheumatoid arthritis. She testified at the hearing that her fibromyalgia has progressively worsened since her initial diagnosis in 2007, that it affected her knees, feet, back, and shoulders, and that it caused her constant pain. Tr. 81. Rheumatoid arthritis exacerbated her pain and caused swelling in her hands and legs. Tr. 82. She testified that she could sit for about one hour on good days but only for approximately 15 minutes on bad days, which occurred four to five times per week. Tr. 82-83.

Family practitioner Dr. Concetta Oteri treated Korfiatis for rheumatoid arthritis. Dr. Oteri opined in April 2016 that due to this condition and the associated inflammation in the joints, Korfiatis could never lift more than 10 pounds, could occasionally lift less than 10 pounds, could stand, walk or sit for 30 minutes without interruption, could stand or walk for a total of 2 hours, and could sit for a total of 4 hours in an 8-hour workday. He further opined that she could never climb,

3

stoop, crouch, kneel, crawl, push or pull, and could occasionally bend, balance, reach, feel and handle. Tr. 883-84.

Rheumatologist Dr. Fredrick Ast, who treated Korfiatis over a four-year period, opined that she could never carry any weight, could never push or pull with her right hand, could occasionally reach in all directions, handle, feel and finger with the right hand, and could occasionally reach overhead, handle and finger with the left hand. Dr. Ast further opined that Korfiatis could never balance, stoop, kneel, crouch or crawl, and that she could sit for 3 hours, stand for 30 minutes, and walk for 20 minutes in an 8-hour work day. Tr. 665-74.[1]

On September 25, 2014, Korfiatis underwent a physical consultative examination by Dr. Sharon Revan. Dr. Revan opined that she had (1) no limitation with upper extremities for fine and gross motor activity; (2) moderate limitations walking, sitting, standing, laying down, and climbing stairs due to joint pain; (3) no limitations to personal grooming; and (4) mild limitations to activities of daily living secondary to her joint pain. Tr. 535-39.

In terms of mental impairments, Korfiatis suffered from depression and post-traumatic stress disorder ("PTSD"). On

---

[1] The Commissioner disputes that this opinion is attributable to Dr. Ast. Because I reverse and remand on other grounds, I do not resolve the issue.

4

September 25, 2014, she presented to Dr. David Mahony for a psychiatric evaluation. She reported depressive symptomatology, including a depressed mood, hopelessness, loss of interests, loss of energy, worthlessness, and social withdrawal. Dr. Mahony noted depressed affect and dysthymic mood. A mental status examination revealed mildly impaired memory skills and below average cognitive functioning. Dr. Mahony opined that Korfiatis was able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress. Tr. 530-33.

In October 2014, state agency psychologist Dr. R. Nobel reviewed Korfiatis's records. Dr. Nobel opined that her mental impairments caused mild difficulties in maintaining concentration, persistence, and pace. Tr. 103.

In May 2016, Maryanne Strong, a licensed clinical social worker, completed a "Medical Assessment of Ability to Do Work Related Activities (Mental)" on Korfiatis's behalf. Counselor Strong opined that her ability to maintain attention and concentration was poor and that her PTSD, anxiety and depression curtailed her ability to remain focused for any length of time. Tr. 885-886. According to Counselor Strong, Korfiatis's

"physical pain and limitations exacerbate her mental health to the degree that she cannot function as needed on a consistent basis, as required by work." Tr. 885. As a result, she believed that Korfiatis was unable to work. Tr. 886.

**C.   The ALJ's Decision**

The ALJ assessed Korfiatis's claims under the five-step, sequential analysis required by 20 C.F.R. § 404.1520. At step one, he found that Korfiatis had not engaged in substantial gainful activity since July 11, 2013, her alleged disability onset date. At step two, the ALJ found that Korfiatis's fibromyalgia, rheumatoid arthritis of the right wrist, asthma, and obesity qualified as severe impairments. The ALJ also found that her depression, back pain, headaches, polycystic ovarian syndrome, and hypothyroidism were not severe impairments. At step three, the ALJ determined that none of Korfiatis's impairments, considered individually or in combination, qualified for any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 404.1520(d).

The ALJ then found that Korfiatis had the residual functional capacity ("RFC") to perform sedentary work, with the following exceptions:

> she can occasionally perform all postural maneuvers, occasionally climb stairs, should avoid all ladders, rope and scaffolds, avoid all hazards, should avoid forceful or repetitive motion with the right wrist, can occasionally perform overhead reaching

6

>     bilaterally, can sustain occasional exposure to
>     vibrations and should avoid concentrated exposure to
>     dust, gas, odors and poor ventilation.

Tr. 42.

In making the RFC determination, the ALJ gave "great weight" to the opinion of consultative examiner Dr. Revan that Korfiatis had only mild or moderate physical limitations. The ALJ reasoned that Dr. Revan was an examining medical source and that her opinion was "consistent with the findings made by other doctors." Tr. 44.

The ALJ also gave "great weight" to the April 2014 opinion of treating physician Dr. Clarke that Korfiatis could return to work with "no right lifting, pushing and pulling more than fifteen pounds and no frequent, forceful or repetitive motions of the right wrist." Tr. 45. Dr. Clarke's opinion was based on a two-year treatment history and was "supported by the copious pages of treatment notes in the record," the ALJ observed. Tr. 45. The ALJ did not, however, address Dr. Clarke's subsequent opinions recorded in his treatment notes in late 2014 and throughout 2015 that Korfiatis could not return to work due to right-hand pain.

The ALJ gave "less than great weight" to the opinion of treating physician Dr. Oteri that Korfiatis could only stand and walk for 2 hours and sit for 4 hours total in an 8-hour workday. Dr. Oteri's opinion was "not wholly supported by the medical

evidence," according to the ALJ.  Tr. 45-46.  The ALJ stated that he considered Dr. Oteri's opinion in limiting Korfiatis to sedentary work, but he discarded the other limitations because Dr. Oteri relied in part on Korfiatis's subjective reports when "contemporaneous treatment notes showed normal examinations."  Tr. 46.

The ALJ next addressed the opinion that Korfiatis represented as belonging to Dr. Ast.  Noting that the opinion was undated and unsigned, the ALJ did not give it "any weight."  Tr. 46.  Assuming it was Dr. Ast's opinion, the ALJ noted that there was "no medical evidence to support such a restrictive functional capacity."  Tr. 46.  Dr. Ast's treatment notes "show no more than mild objective findings" and merely report Korfiatis's subjective complaints, observed the ALJ.  Tr. 46.

In terms of Korfiatis's mental impairments, the ALJ gave "great weight" to the state agency psychological consultants' opinions "because they are consistent with the record as a whole."  Tr. 46.  But the ALJ gave no indication that he had considered Counselor Strong's more recent opinion on the matter.

Relying on the testimony of a vocational expert, the ALJ then found at step four that Korfiatis could performing her past relevant work as a medical receptionist.  Tr. 46.  Accordingly, the ALJ concluded that Korfiatis had not been disabled from the alleged onset date through the date of his decision.  Tr. 47.

## II. STANDARD OF REVIEW

I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner. See 42 U.S.C. § 405(g). That review is limited, however, "to determining whether the [Commissioner] used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). I defer to the Commissioner's findings of fact, so long as those findings are supported by substantial evidence. Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the Commissioner's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion." Id. at 770. The Commissioner's findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). "Issues of credibility and the drawing of permissible inference from evidentiary facts are the

prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for her, not for the doctors or for the courts." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (internal quotation marks and brackets omitted).

### III. ANALYSIS

Korfiatis makes four arguments in this appeal. First, she argues that remand is warranted because the ALJ failed to consider the opinion evidence from Counselor Strong. Second, she claims that the ALJ improperly failed to give controlling weight to the opinions of her treating physicians, Dr. Oteri and Dr. Ast. Third, she maintains that the ALJ failed to address the limiting effects of her headaches. Finally, she asserts that the ALJ erred in finding that she could perform her past relevant work as a medical receptionist. Because I conclude that the ALJ committed legal error by failing to indicate that he had considered Counselor Strong's opinion, I need not address Korfiatis's remaining arguments.

An ALJ must consider both "medical opinions," defined as opinions provided by "acceptable medical sources," and "[o]pinions from medical sources who are not acceptable medical sources," along with other relevant evidence. See 20 C.F.R. §§ 404.1527, 416.927. Licensed clinical social workers, such as Counselor Strong, fall in the latter category. See Social

10

Security Ruling ("SSR") 06-03p (Aug. 9, 2006), 2006 WL 2329939, at *2. The SSA has recognized the reality that non-acceptable medical sources, such as nurse practitioners, physician's assistants, and licensed clinical social workers, are increasingly performing functions that were previously in the exclusive domain of physicians, psychologists, and other acceptable medical sources. See id. at *3. As a result, the opinions of non-acceptable medical sources "are important and should be evaluated on key issues such as impairment severity and functional effects." Id. Indeed, the ALJ may assign greater weight to an opinion from a non-acceptable medical source than from an acceptable medical source. See id. at *5.

The ALJ is instructed to consider the same factors when evaluating opinions from both acceptable and non-acceptable medical sources. See 20 C.F.R. §§ 404.1527(c),(f), 416.927(c),(f). Those factors include the nature of the relationship between the medical source and the claimant, the supportability of the opinion, the consistency of the opinion with the record as a whole, and whether the source of the opinion is a specialist. See id. The ALJ generally should explain the weight given to non-acceptable medical source opinions or otherwise ensure that his discussion of evidence makes his reasoning apparent. See 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2); SSR 06-03p, 2006 WL 2329939, at *6; Nichols v.

U.S. Soc. Sec. Admin., Acting Comm'r, 2018 DNH 047, 2018 WL 1307645, at *9 (D.N.H. Mar. 13, 2018); Dumensil v. Astrue, 2010 DNH 135, 2010 WL 3070107, at *5 (D.N.H. Aug. 4, 2010).

In the present case, the ALJ did not even mention Counselor Strong's opinion, let alone discuss at least some of the reasons for the weight given to her opinion. It is thus "impossible to determine whether this evidence was considered and implicitly discredited or instead was simply overlooked." Lord v. Apfel, 114 F. Supp. 2d 3, 14 (D.N.H. 2000). The ALJ's error warrants remand. See Seavey v. Barnhart, 276 F.3d 1, 12 (1st Cir. 2001) ("When an agency has not considered all relevant factors in taking action, or has provided insufficient explanation for its action, the reviewing court ordinarily should remand the case to the agency.").

I am unpersuaded by the Commissioner's argument that the ALJ's error was harmless. The Commissioner claims that Counselor Strong's opinion is "of little probative value" and is contradicted by the opinions of two acceptable medical sources, Dr. Mahony and Dr. Nobel. See Doc. No. 16-1 at 5-6.[2] That may

---

[2] The Commissioner further asserts that there is no evidence that Counselor Strong was a treating provider, which Korfiatis contests. I need not resolve this issue because the regulations obligating an ALJ to consider opinions from non-acceptable medical sources do not distinguish between treating and non-treating providers. See 20 C.F.R. §§ 404.1527(f), 416.927(f). In other words, even if Counselor Strong was not a treating source, the ALJ had a duty to consider her opinion.

12

be so, but it does not mean that remand would be an empty exercise. Counselor Strong's opinion was the most recent mental health opinion in the record and the only opinion supporting Korfiatis's claim that her mental impairments significantly impacted her ability to work. Unlike in the single case cited by the Commissioner, consideration of this opinion may lead the ALJ to a different conclusion. Cf. Ward, 211 F.3d at 656 (remand not necessary because "application of the correct legal standard could lead to only one conclusion") (internal quotation marks omitted). Therefore, the ALJ's error was not harmless.

## IV. **CONCLUSION**

Pursuant to sentence four of 42 U.S.C. § 405(g), I deny the Commissioner's motion to affirm (Doc. No. 16) and grant Korfiatis's motion for an order reversing the Commissioner's decision (Doc. No. 14). The case is remanded for further proceedings in accordance with this memorandum and order. The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

March 8, 2019

cc: Daniel A. Osborn, Esq.
 Roger B. Phillips, Esq.
 Luis A. Pere, Esq.